NO. 07-01-0144-CR


NO. 07-01-0145-CR


NO. 07-01-0146-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



JANUARY 9, 2002



______________________________




LINDA ELIZABETH ARNHEITER, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE COUNTY CRIMINAL COURT NO. 5 OF HARRIS COUNTY;



NOS. 1025562, 1025563, 1025564; HONORABLE E. JANICE LAW, JUDGE



_______________________________



Before BOYD, C.J., and REAVIS and JOHNSON, JJ.

 Appellant Linda Elizabeth Arnheiter brings this appeal from three convictions for
failure to maintain motor vehicle title records as required by a special statute applicable
to Harris County. Finding merit in the second of appellant's three issues, we reverse.

 In an effort to curb what was perceived as a serious problem with fraudulent
documents and transactions involving motor vehicle titles, the Harris County Tax Assessor
and Houston Police Department supported the passage of the Troy Blando Motor Vehicle
Theft Prevention Act of 1999 (the Act). 76th Leg., R.S., Ch. 1478, sec. 2, 1999 Tex.Gen.
Laws 5091. It was codified as Chapter 520 of the Transportation Code and became
effective on September 1, 1999. The Act requires anyone who operates a "motor vehicle
title service" in Harris County to obtain a license from the county tax assessor, comply with
record keeping requirements, and permit inspection of their records without a warrant.
Section 520.057. (1) Section 520.061 makes violation of the chapter, or a rule adopted by
the county tax assessor, (2) a Class A misdemeanor offense.

 

It is undisputed that appellant operates a motor vehicle title service in Harris County and
that she obtained a license in December 1999. On October 4, 2000, Detective William
Smith of the Harris County Sheriff's Department inspected the records maintained by
Arnheiter, doing business under the name Servicios Latino Americanos. Smith found a
form which indicated Arnheiter transferred the titles on three vehicles for which she did not 
maintain all of the records required by the statute. Specifically, Smith could not find any
records showing the name, age, address, sex or drivers' license number of these
customers. On October 11, 2000, appellant was charged by separate instruments with
failure to maintain motor vehicle records on each of the three vehicles. 

 At her jury trial, appellant admitted she did not have the additional records, but
testified she was not aware she was required to keep that information. She admitted that
she knew additional record keeping requirements were imposed on motor vehicle title
services about December 1999 when she obtained her license. She also admitted seeing
posters in the tax office about the new rules and receiving a letter from the tax assessor
announcing a meeting to discuss application of the statute. She discarded the letter
because it arrived the day after the meeting. The State presented the testimony of a
deputy clerk named Diana Aguilar in the tax office, who stated it was her practice to inform
each person who applied for a license of the record keeping requirements of the statute
and provide them with a copy of it. She did not have specific recollection of doing this with
appellant.

 The jury found her guilty in each case and punishment was assessed by the trial
court at eight days confinement in the Harris County Jail. Appellant timely perfected
appeal from each judgment and now presents three issues for our review. They are
whether 1) there was legally sufficient evidence to support the conviction when the State
failed to prove the tax assessor-collector prescribed and made available a form to maintain
the records required under Section 520.057(a); 2) the evidence was legally sufficient to
sustain her conviction when the form made available by the tax assessor-collector does
not request all of the information required by the statute, and 3) the trial court erred in
setting out the provisions of Section 520.057(b) in its charge when appellant was not
charged with violating that subsection. 

 Appellant's first challenge is to the legal sufficiency of the evidence. She argues
there was no evidence that the Harris County Tax Assessor-Collector created and made
available a form as required by the Act. In considering a legal insufficiency challenge, we
are required to view the evidence in a light most favorable to the prosecution and then
determine if any rational trier of fact could have found the essential elements of the offense
beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789,
61 L.Ed.2d. 560 (1979). 

 At trial, the State admitted the document entitled Harris County Title Service
Transaction Form as its exhibit number six. Deputy Clerk Aguilar identified the form and
stated "they have to present this form every time they conduct business within our office."
In discussing the processing of applications for title services, she stated that she would 
explain to title services "what they have to do with that transaction sheet . . ." (emphasis
added). Viewing the evidence in the light most favorable to the verdict, as we must, from
this testimony, and the text of the form itself, a rational trier of fact could find that State's
exhibit number six was a form promulgated by the tax assessor pursuant to the Act. We
overrule appellant's first issue.

 Appellant's second issue assumes, for the purpose of argument, that State's exhibit
six, entitled "Harris County Title Service Transaction Form," is a form prescribed by the tax
assessor pursuant to the Act. That form contains blanks for date of sale, vehicle year,
make, vehicle identification number and purchaser's name. It does not contain a place for
the recordation of a customer's age, sex, driver's license number, or the vehicle's license
plate number. Appellant argues there was no evidence "that the . . . tax assessor-collector
prescribed and made available a form that could be used to maintain all the records
required by Section 520.057(a). Therefore it was impossible for the State to establish that
appellant failed to maintain records on a form prescribed by the tax assessor-collector." 
After reciting the evidence introduced at trial, the State's argument in support of the jury's
verdict consists of a single conclusory sentence that the evidence is sufficient to support
a finding that appellant failed to maintain the information on the tax assessor's form. It
contains no discussion of how a licensee could record this information on the form
provided.

 Resolution of this issue requires construction of section 520.057. A court's primary
objective in construing a statute is to determine and give effect to the legislative intent. 
Liberty Mutual Insurance Company v. Garrison Contractors, Inc., 966 S.W.2d 482, 484
(Tex. 1998). That purpose is accomplished by first looking at the plain and common
meaning of the statute's words, unless the plain meaning would produce an absurd result.
Bridgestone/Firestone, Inc. v. Glyn-Jones, 878 S.W.2d 132, 134 (Tex. 1994). By statute
we are also instructed that in our construction, we are to presume that the entire statute
is intended to be effective, to create a just and reasonable result, and one feasible of
execution. Tex. Govt. Code Ann. § 311.021 (Vernon 1998). 

 Here, a literal reading of section 520.057(a)(2) and (3) would require that the title
service company photocopy customers' drivers' licenses and proof of financial
responsibility directly onto the form promulgated by the tax assessor. The State takes the
position that this is what is required of title service companies without offering any
explanation of how this could be accomplished on the form provided. However, we
perceive this to be an absurd result and question whether it would be feasible of execution. 
The intent of the legislature appears clear; that title service companies obtain photocopies
of customers' drivers' licenses as proof of financial responsibility. The failure to provide
space on the tax assessor's form for those copies does not excuse performance of that
statutory duty, and appellant has provided no authority supporting the conclusion that it
would.

 Appellant also argues that the absence of the items on the tax assessor's form is
determinative because the court's charge only alleged she failed to maintain the
information on the prescribed form, not that she failed to keep the required information. 
The application paragraph of the court's charge provided:

 Now, if you find from the evidence beyond a reasonable doubt that on or [sic]
October 4, 2000, in Harris County Texas, the Defendant . . . did unlawfully,
while the holder of a motor vehicle title service license, intentionally or
knowingly fail to maintain records for each transaction in which the
defendant received compensation, on the form prescribed and made
available by the Harris County tax assessor-collector, as required by section
520.057 . . . namely, a transaction for [listing specific vehicle], then you will
find the defendant guilty.

In Malik v. State, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997), the Court of Criminal
Appeals held that the sufficiency of the evidence must be measured by the elements of the
offense as defined by a hypothetically correct jury charge. Id. at 240. A hypothetically
correct jury charge for a case would be one that accurately sets out the law, is authorized
by the indictment, does not unnecessarily restrict the State's theories of liability, and
adequately describes the particular offense for which the defendant was tried. Id. at
239-40. 

 Applying the teachings of Malik to this case requires us to determine whether the
phrase "on the form" in the application paragraph of the court's charge was surplusage. 
Our holding that the legislature did not intend to require title services to photocopy onto
the tax assessor's form dictates a finding that the phrase "on the form" is surplusage as
to the items that are required to be photocopied. As to the other information, specifically
the vehicle license plate number, customer's address and, for individual customers, (3) their
age, sex, and driver's license number, the phrase would not be surplusage. Therefore,
where the evidence clearly showed the tax assessor's form did not allow for the entry of
those items, no rational factfinder could find appellant intentionally or knowingly failed to
maintain that information "on the form prescribed" by the tax assessor.

 We sustain appellant's second issue. This disposition obviates the need to address
appellant's third issue. Because we find the evidence legally insufficient, we reverse the
judgment of the trial court and render a judgment of acquittal in each case.


 John T. Boyd

 Chief Justice


Do not publish.














 
1. Section 520.057 provides:


 (a) A holder of a motor vehicle title service license shall maintain records as
required by this section on a form prescribed and made available by the
county tax assessor-collector for each transaction in which the license holder
receives compensation. The records shall include:


 (1) the date of the transaction;


 (2) the name, age, address, sex, driver's license number, and a legible
photocopy of the driver's license for each customer; and


 (3) the license plate number, vehicle identification number, and a legible
photocopy of proof of financial responsibility for the motor vehicle involved.


 (b) A motor vehicle title service shall keep:


 (1) two copies of all records required under this section for at least two years
after the date of the transaction;


 (2) legible photocopies of any documents submitted by a customer; and


 (3) legible photocopies of any documents submitted to the county tax
assessor-collector.
2. Compliance with rules promulgated by the tax assessor are not at issue here and
we need not address whether the legislature improperly delegated its power to define
criminal offenses to that official.
3. Although not raised by appellant, we note the Act does not define the term
"customer." This is significant because the purchasers of two of the vehicles at issue are
shown to be Astrodome Auto Sales. We presume this is a corporation, which clearly would
not have a driver's license, precluding appellant from obtaining a copy of that document. 
However, a corporation would have an address, proof of financial responsibility, and the
vehicle license plate number. 



red a finding that he used or threatened to use deadly force for which the existence
of a knife would have been probative evidence. He was convicted of unlawful restraint
with a finding that he recklessly exposed the victim to a substantial risk of serious bodily
injury. See Tex. Pen. Code Ann. § 20.02(a) and (c)(2)(A) (Vernon Supp. 2002). There
was testimony from Coretta's friend that appellant threw Coretta against the witness's car,
which caused a dent in the vehicle and by physical force appellant got Coretta in his own
vehicle. Coretta herself testified that appellant hit her in the face and on her head once
she was in his vehicle. At one point, when she tried to run away, he hit her in the stomach
very hard. He then hit her on the head and face again, and her head hit a brick wall. 
Once he got Coretta into his bedroom, he struck her again on the back of her head and
the upper part of her body. Therefore, there was evidence that appellant recklessly
exposed Coretta to a substantial risk of serious bodily injury by throwing her against a
vehicle hard enough to dent it, by hitting her in the stomach, by striking her on the head,
and by hitting her head against a brick wall. 

 Furthermore, because of two prior convictions, the range of punishment for the
offense was 25 years to 99 years or life in the penitentiary. There was also evidence at
the punishment hearing of nine prior judgments and convictions against appellant. The
punishment actually assessed by the jury was 40 years confinement, which is not at the
upper end of the punishment range. We therefore do not believe that the remark of the
prosecutor constitutes reversible error. Appellant's third and fourth issues are overruled.

 In summary, having found no reversible error, the judgment of the trial court is
affirmed. 


 John T. Boyd

 Chief Justice


Do not publish.
1. The jury was charged on the offenses of aggravated kidnapping and
kidnapping.